[Cite as *State v. Abdi*, 2011-Ohio-3550.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

State of Ohio,                                          :
                                                       :
      Plaintiff-Appellee,                        :            Case No: 09CA35
                                                       :
      v.                                         :
                                                       :            DECISION AND
Abdifatah Abdi,                                        :            JUDGMENT ENTRY.
                                                       :
      Defendant-Appellant.                       :            File-stamped date:  7-11-11

APPEARANCES:

Russell S. Bensing, Cleveland, Ohio, for Appellant.

C. David Warren, Athens County Prosecutor, and Keller J. Blackburn, Athens County Assistant Prosecutor, Athens, Ohio, for Appellee.

Kline, J.:

{¶1}     Abdifatah Abdi (hereinafter "Abdi")[1] appeals his convictions for two counts of aggravated robbery, each with a firearm specification, and one count of murder, which also carried a firearm specification.  Abdi first contends that aggravated robbery and felony murder are allied offenses of similar import.  Because aggravated robbery and felony murder are allied offenses of similar import, we agree.  Therefore, we remand the case to the trial court to consider (1) whether Abdi committed felony murder and

---

[1] Initially, we note that several individuals have faced criminal charges related to the events at issue in this case.  Several witnesses testified in each of the cases.  In some instances, a name of a particular witness may be spelled differently in other cases than the spelling in this case.  We have elected to spell witnesses' names consistent with the spelling in the official trial transcript of this case.

aggravated robbery separately or (2) whether he committed the crimes with a separate animus.

{¶2}     Abdi next contends that the trial court erred when it denied Abdi's motion for a change of venue.  Because Abdi failed to show that any jurors were actually biased, we disagree.

{¶3}     Abdi next contends that the trial court erred when it failed to suppress statements Abdi gave to the police.  Because Abdi waived his *Miranda* rights voluntarily, knowingly, and intelligently, we disagree.

{¶4}     Abdi next contends that the trial court erred by permitting the State to introduce "other acts" evidence in violation of Evid.R. 404(B) when the trial court allowed testimony that Abdi and his co-conspirators planned on committing a separate robbery.  Because the evidence was admissible under Evid.R. 404(B) to show Abdi's and his co-conspirators' intent, we disagree.  Additionally, any error by the trial court was harmless considering the substantial evidence of Abdi's guilt.

{¶5}     Abdi next contends that there was insufficient evidence to convict Abdi of murder, or, alternatively, that Abdi's conviction was against the manifest weight of the evidence.  Because Abdi engaged in aggravated robbery where gunfire and injury or death to bystanders was foreseeable, and because the jury could convict Abdi for the murder regardless of who fired the fatal shot, we disagree.

{¶6}     Abdi next contends that the trial court erred in permitting the State to call co-conspirators as witnesses.  Abdi argues that he was prejudiced because the State knew that the witnesses would invoke their Fifth Amendment right against self-incrimination in front of the jury.  Because the State is permitted to call a witness who will invoke his or

her Fifth Amendment right against self-incrimination, so long as the State does not persist in repeated questioning, we disagree.

{¶7}     Abdi next contends that the trial court erred in denying Abdi's motion to compel disclosure of grand jury testimony.  Because Abdi failed to show a particularized need for the grand jury testimony that outweighed the need for secrecy of the grand jury proceedings, we disagree.

{¶8}     Abdi next contends that the trial court erred by failing to impose a sentence consistent with the principles and purposes of sentencing and by failing to properly consider the seriousness and recidivism factors under R.C. 2929.12.  Because the record reflects that the trial court considered the relevant factors under R.C. 2929.11, 2929.12, and 2929.13, we disagree.

{¶9}     Finally, Abdi contends that the trial court erred by sentencing Abdi to consecutive terms of imprisonment without making findings of fact.  Because the trial court was not required to make findings of fact before sentencing Abdi to consecutive terms of imprisonment, we disagree.

{¶10}    Accordingly, we reverse in part and affirm in part the judgment of the trial court.

I.

{¶11}    The events at issue in this case concern a shooting late in the evening on February 14, 2009, which resulted in the death of Donnie Putnam (hereinafter "Putnam").  The evidence introduced at trial was comprehensive and begins with events that occurred well before the actual shooting.  In December, 2008, Michael White (hereinafter "White") broke into Charles Calendine's (hereinafter "Calendine") residence

in Athens, Ohio. After doing so, White proceeded to steal a large number of firearms from the residence.

**{¶12}** Among the firearms stolen was a .22 Marlin semi-automatic rifle with an optical scope. According to White, he estimated he had stolen 30 or 40 guns. White then sold those guns to Phillip Boler (hereinafter "Boler"). At trial, Calendine confirmed the theft and identified the .22 Marlin semi-automatic rifle recovered in this case as being the one stolen from him.

**{¶13}** The shooting that resulted in Putnam's death occurred at a trailer owned by Billy J. Osborne, Jr. (hereinafter "Osborne"). According to testimony at trial, Osborne made money dealing marijuana and crack cocaine, but Osborne denied this on the stand. The State's theory was that Abdi and his co-conspirators armed themselves and drove to Osborne's trailer intent on committing a robbery.

**{¶14}** In the early evening hours of February 14, 2009, Abdi, Mahat Osman (hereinafter "Osman"), and Hamda Jama, also known as Honey, walked into the trailer of Chelsea Deal (hereinafter "Deal") without knocking. At the time, Deal was living with her boyfriend, Luke (the record does not indicate Luke's last name). Osman and Honey were asking Luke about the whereabouts of a man named William Evans (hereinafter "Evans"), who was an acquaintance of Luke and Deal. Deal overheard Osman state that he wanted to "rob" Evans, and Abdi was standing nearby when Osman stated his intentions. Tr. Day 4 at 29. Deal and Luke rebuffed repeated requests by Honey, Osman, and Abdi to allow them to use Deal and Luke's vehicle. Deal and Luke eventually agreed to give Honey, Osman, and Abdi a ride to Nelsonville. Honey, however, did not get in the car with the others, so Deal and Luke drove off with Osman

and Abdi.  Instead of taking Osman and Abdi to Nelsonville, Deal testified that Osman and Abdi demanded to be taken to a trailer occupied by Boler and a man known as Halfman.  (The record indicates that both Boler and Halfman occupied the trailer.  We will refer to the trailer as "Halfman's trailer" for brevity.)

**{¶15}**    Earlier on February 14th, Honey purchased a red Mitsubishi Eclipse from Ricky Phillips (hereinafter "Phillips"), a neighbor of Deal's.  The car had a manual transmission, and Honey had no experience driving a manual transmission car.  Jeremy Graber (hereinafter "Graber"), a neighbor of Phillips (and Deal), agreed to give Honey a driving lesson.  (Honey apparently did not get in the car with Deal, Luke, Osman, and Abdi because she was waiting on Graber.)  Graber testified that, after driving around the trailer park briefly, Honey drove onto the highway and drove to Halfman's trailer.

**{¶16}**    Graber testified that there were quite a few people present at the trailer, and he expressly identified Boler, Honey, Osman, and Abdi.  Graber also observed both a Marlin .22 rifle and a .40 caliber Smith and Wesson pistol at the trailer.  Graber left and eventually made his way home.

**{¶17}**    (Graber had also encountered Abdi the night before, i.e., February 13, 2009, when Graber went to Halfman's trailer.  Shortly after entering the trailer, Graber testified that Abdi slammed Graber against a wall, and Abdi and Boler demanded to know the whereabouts of a man named "Johnny Perry."  Tr. Day 3 at 142.  According to Graber, Halfman yelled something to Abdi and Boler, so they backed off.)

**{¶18}**    Later in the evening of February 14th, Eric Fussner (hereinafter "Fussner") drove to Halfman's trailer to purchase crack cocaine.  Fussner completed this transaction and was getting ready to leave when Boler and the other occupants of the

trailer asked Fussner for a ride.  Fussner agreed and waited for them.  When the occupants took too long to get ready, Fussner attempted to leave without giving them a ride.  As he did so, Halfman drew a pistol and ordered him to stay.

**{¶19}** Eventually, Boler, Osman, Abdi, Honey, and Fussner were ready to leave.  There were two cars, Fussner's car and the red Mitsubishi Eclipse that Honey had purchased from Phillips.  As they got ready to leave, Abdi started to pull Fussner out of his car, but Boler told Abdi to leave Fussner alone.  Boler and Fussner drove the two cars to Osborne's trailer.  Fussner was in his car along with Osman and Abdi.  Boler was in the red Mitsubishi Eclipse with Honey.

**{¶20}** When they arrived at the destination, Boler, Osman, and Abdi exited the vehicles.  Boler carried the .22 Marlin and stated to Osman that he would have "his" head in his sights the whole time.  Osman and Abdi then walked up to Osborne's trailer.

**{¶21}** That evening, Shane Benson (hereinafter "Benson") and his friend John Perry Jr. (hereinafter "Perry") were in the dining room of Osborne's trailer smoking crack cocaine.  Someone (the record is not precisely clear on who) noticed the cars approaching the trailer.  Because of information he had received previously, Osborne was concerned that the individuals in the cars wanted to rob him.  Earlier that day, Osborne had retrieved several guns and had placed them in readily accessible locations in the trailer.  He placed a 9 millimeter semi-automatic pistol on top of the television.  He placed an SKS semi-automatic rifle next to the front door.  And finally, he leaned a shotgun up against a countertop.

**{¶22}** Osman and Abdi knocked on Osborne's front door.  Osborne partially opened it and asked what they wanted.  Osman and Abdi demanded to speak with "Johnny."

Osborne said that Johnny was not there and that he (i.e., Osborne) had children in the trailer. Abdi drew a .40 caliber semi-automatic Smith and Wesson pistol and pressed it against Osborne's gut. Osborne grabbed the pistol and pushed it aside. As the two men struggled over the pistol, Abdi fired the gun twice. Eventually, Osborne manipulated the pistol so that it pointed towards Abdi's head. At this point, Abdi turned and ran letting go of the pistol.

{¶23}    The front door of Osborne's trailer opened to the outside. After Osborne wrested the pistol away from Abdi, Osborne stood slightly outside his trailer. Osman then slammed against the front door knocking Osborne against the wall. Osborne shoved the door back open and knocked Osman backwards. Osman then ran from the porch.

{¶24}    At this point, multiple individuals began firing weapons. Osborne fired the gun he wrested from Abdi until he ran out of bullets. Osborne then retrieved his SKS semiautomatic rifle and fired several rounds until it jammed. Osman fired some rounds as he retreated from the trailer with Abdi. Perry fired four rounds from a 9mm pistol, and Boler fired at least three rounds from the .22 Marlin rifle. Finally, Benson fired at least one shell from a shotgun.

{¶25}    During the struggle, Putnam, who was a friend of Osborne, arrived on the scene with his girlfriend Missy Swart. Putnam saw Osborne struggling with two men on his front porch. Putnam got out of his car and started to move towards the porch. A 9mm round struck Putnam during the exchange of gunfire. The bullet punctured Putnam's right lung. Mortally wounded, Putnam fell to the ground and was later pronounced dead at a hospital.

{¶26}    When the gunfire started, Fussner kept his head down, backed his car out of the driveway, and drove off.  As a result, Osman, Abdi, Honey, and Boler all piled into the red Mitsubishi.  Due to the speed of the escape, however, the car crashed shortly after leaving Osborne's trailer.  Boler remained in the area of the wreck, but Osman, Abdi, and Honey fled on foot.

{¶27}    Paramedics were called to the scene of the shooting.  One of the dispatched squads instead encountered the overturned red Mitsubishi.  The paramedics found Boler who appeared dazed and confused after the accident.  While one of the paramedics was treating Boler, several Athens County Sheriff's officers arrived and arrested Boler.  Officers of the Ohio State Highway Patrol eventually apprehended Boler's co-conspirators, and Abdi was among those arrested.

{¶28}    Lieutenant Bryan Cooper (hereinafter "Lt. Cooper") of the Athens County Sheriff's department interviewed Abdi multiple times, two of which are relevant to Abdi's appeal.  Lt. Cooper first interviewed Abdi beginning at 4:39 a.m. on February 15, and he interviewed Abdi again beginning at 11:26 a.m. on the same day.  At the beginning of the first interview, Abdi indicated that his birthday was 1/1/1992;[2] he was in the tenth grade; he could read and write English; he was not taking prescription medication; and he was not under the influence of drugs or alcohol.  Lt. Cooper then read Abdi each of Abdi's *Miranda* rights, and Abdi waived those rights verbally and in writing.  Abdi then informed Lt. Cooper that Abdi would like to talk about the incident.

{¶29}    At the beginning of the second interview, Lt. Cooper advised Abdi that he was still under the *Miranda* warnings.  Abdi then reiterated that he wished to talk to Lt.

---

[2] Although Abdi indicated to Lt. Cooper that his birthday was 1/1/1992, his actual birthday is December 26, 1992.

Cooper about the incident. The second interview was eventually played to the jury at trial, and during that interview, Abdi confessed that he and his co-conspirators took weapons to Osborne's house to commit a robbery.

{¶30}    The case was tried to a jury. The jury returned a verdict finding Abdi guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1); aggravated robbery, in violation of R.C. 2911.01(A)(3); and murder, in violation of R.C. 2903.02(B). In addition, the jury found Abdi guilty of a firearm specification pursuant to R.C. 2941.145 for each count of aggravated robbery and the murder. The trial court sentenced Abdi to ten years for each aggravated robbery conviction, three years for each firearm specification, and fifteen years to life for the murder conviction. The trial court merged the sentences for the aggravated robbery convictions. The trial court also merged the sentences for the firearm specifications. The trial court ordered all other sentences to be served consecutively for an aggregate sentence of 28 years to life.

{¶31}    Abdi appeals and assigns the following errors for our review: I. "The Trial Court erred to the prejudice of Defendant, in violation of the Defendant's rights under the 5th and 14th Amendments to the United States Constitution, in failing to merge the conviction for felony murder under Ohio R.C. §2903.02(B) with the convictions for aggravated robbery under Ohio R.C. §2911.01, since the offenses are allied offenses of similar import under Ohio R.C. § 2941.25, and aggravated robbery which results in the death of a person is a lesser included offense of felony murder." II. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 6th and 14th Amendment to the Constitution of the United States, in denying the Defendant's Motion for Change of Venue." III. "The Trial Court erred to the prejudice of Defendant, and in

violation of his rights under the 5th, 6th, and 14th Amendment to the Constitution of the United States, in denying his Motion to Suppress the statements made by the Defendant to the police." IV. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 14th Amendment to the Constitution of the United States, in permitting the State to introduce 'other acts,' in contravention to Ohio Evid.R. 404(B)." V. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 14th Amendment to the Constitution of the United States, by entering judgment against the Defendant on the charge of murder, as the evidence was insufficient to sustain the conviction, or, in the alternative, the conviction was against the manifest weight of the evidence." VI. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 14th Amendment to the Constitution of the United States, in permitting the prosecutor to call two-codefendants as witnesses for the sole purpose of having such witnesses invoke their 5th Amendment right against self-incrimination before the jury." VII. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 6th and 14th Amendment to the Constitution of the United States, in denying Defendant's Motion to Compel Disclosure of Grand Jury Testimony." VIII. "The Trial Court erred to the prejudice of Defendant in failing to impose a sentence consistent with the principles and purposes of sentencing under Ohio R.C. §2929.11, and proper consideration of the seriousness and recidivism factors under Ohio R.C. §2929.12." And, IX. "The Trial Court erred to the prejudice of Defendant, and in violation of his rights under the 14th Amendment to the Constitution of the United States, in sentencing Defendant to consecutive terms of imprisonment with [sic] making findings of fact under Ohio R.C. §2929.14(E)(4)."

II.

**{¶32}** In his first assignment of error, Abdi contends that the trial court erred by failing to merge his convictions for felony murder and aggravated robbery because they are allied offenses of similar import.  This issue presents a legal question, which we review de novo.  See, e.g., *State v. Cox*, Adams App. No. 02CA751, 2003-Ohio-1935, at ¶5.

**{¶33}** Under Ohio law, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  R.C. 2941.25(A).  But "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."  R.C. 2941.25(B).

**{¶34}** This statute "codified the judicial doctrine of merger" and "prohibited the 'cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed.'"  *State v. Ware* (1980), 63 Ohio St.2d 84, 86, quoting *State v. Roberts* (1980), 62 Ohio St.2d 170, 172-73.

**{¶35}** The Supreme Court of Ohio has recently overruled its prior judgments in this area of the law, and it articulated the proper analysis for determining whether merger is appropriate.  See *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at ¶44.  "In determining whether offenses are allied offenses of similar import under R.C.

2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.  [*State v.*] *Blankenship*, 38 Ohio St.3d [116,] 119[,] (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct.  It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.'  [Emphasis sic]). * * *

**{¶36}**     "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'  [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569[,] at ¶50 (Lanzinger, J., dissenting).

**{¶37}**     "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶38}**     "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."  *Johnson* at ¶48-51 (emphasis sic).

**{¶39}**     Clearly an offender could, with the same conduct, commit aggravated robbery and felony murder.  Therefore, aggravated robbery and felony murder are allied offenses of similar import.

**{¶40}**     Here, Abdi's counsel failed to raise any objection on this basis at the sentencing hearing.  And pursuant to Crim.R. 52(B), we review any error for plain error. The Supreme Court of Ohio has "previously held that the imposition of multiple

sentences for allied offenses of similar import is plain error." *State v Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, at ¶31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, at ¶96-102.

**{¶41}**     Even though felony murder and the predicate felony (here, aggravated robbery) are allied offenses of similar import, Abdi may still be sentenced for both crimes.  In order to sentence Abdi for both crimes, the State must show that Abdi committed the crimes "separately or with a separate animus."  See R.C. 2941.25(B).

**{¶42}**     Because aggravated robbery and felony murder are allied offenses of similar import, we remand the present case for resentencing.  On remand, the trial court should consider whether Abdi committed felony murder separately or with a separate animus from his aggravated robbery conviction and sentence Abdi accordingly.

**{¶43}**     Accordingly, we sustain Abdi's first assignment of error.

III.

**{¶44}**     In his second assignment of error, Abdi contends that the trial court erred by failing to grant his motion for a change of venue.

**{¶45}**     "Upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."  Crim.R. 18(B).

**{¶46}**     "A change of venue rests largely in the discretion of the trial court, and * * * appellate courts should not disturb the trial court's ruling on a motion for change of venue in a criminal case unless it is clearly shown that the trial court has abused its discretion."  *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 37 (citations omitted); see,

also, *State v. Berecz*, Washington App. No. 08CA48, 2010-Ohio-285, at ¶30. "An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably." Id. at ¶30, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶47}** Abdi contends that the trial court should have granted his motion for a change of venue due to the pre-trial publicity surrounding his and his co-conspirators' cases. In addition to the criminal rule cited above, the United States Supreme Court has held that "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences[, and] * * * where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Sheppard v. Maxwell* (1966), 384 U.S. 333, 362-63; see, also, *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*, 125 Ohio St.3d 149, 2010-Ohio-1533, at ¶23 ("[T]he Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution secure the criminal defendant's right to a fair trial. * * * Pervasive, unfair, and prejudicial media coverage of a criminal trial can sometimes deprive a criminal defendant of this constitutional right.").

**{¶48}** "However, 'pretrial publicity[,] even pervasive, adverse publicity[,] does not inevitably lead to an unfair trial.'" *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, at ¶58, quoting *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 554 (alterations sic). "A defendant claiming that pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased." *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, citing *Mayola v. Alabama* (C.A.5, 1980), 623 F.2d 992,

996. "Only in rare cases may prejudice be presumed." *Treesh* at 464, citing *Mayola* at 997; see, also *State v. Lundgren*, 73 Ohio St.3d 474, 479, 1995-Ohio-227. The fact that extensive, pre-trial publicity indicated that a co-defendant had recently been convicted is insufficient to establish prejudice. See *State v. Hill* (March 22, 1995), Belmont App. No. 90-B-5; *State v. Deavors* (Sep. 13, 1979), Montgomery App. No. CA 6095.

{¶49}     Abdi argues that he has satisfied his burden by filing materials with the trial court demonstrating the extensive publicity of his and his co-conspirators' cases. Abdi argues that, because of the pre-trial publicity, the prospective jurors were familiar with Abdi's and his co-conspirators' cases. According to Abdi, the pre-trial publicity indicated that two of his co-conspirators were convicted.

{¶50}     The trial court did not err in denying Abdi's motion for a change of venue. The trial court conducted an extensive voir dire of all prospective jurors, which lasted two days. The defense had ample opportunity to discover evidence of juror bias. Abdi failed to show that any jurors were actually biased based on pre-trial publicity (or based on any other reason).

{¶51}     Abdi has also failed to show that the entire jury pool was aware of his co-conspirators' cases such that Abdi did not receive a fair trial. On appeal, Abdi selects quotes from four prospective jurors indicating that those jurors were aware that Abdi's co-conspirators had been found guilty. Only one of these jurors was seated on the final panel, and Abdi cannot point to actual bias on the part of this juror. Additionally, Abdi's trial counsel passed on using a peremptory challenge that would have excused this juror. (Abdi's counsel subsequently used the peremptory challenge on a juror who was seated later in the jury selection process). The other three prospective jurors did not sit

on the final panel.  In fact, the State successfully moved to dismiss one of these jurors for cause (based on the juror having a pending court case), and Abdi's trial counsel objected to her dismissal.

**{¶52}**     Absent evidence of actual bias, Abdi's attempt to demonstrate prejudice, based on extensive pre-trial publicity of Abdi's and his co-conspirators' cases, is insufficient to show that Abdi did not receive a fair trial.  Therefore, the trial court did not abuse its discretion by denying Abdi's motion for a change of venue.

**{¶53}**     Accordingly, we overrule Abdi's second assignment of error.

IV.

**{¶54}**     In his third assignment of error, Abdi contends that the trial court erred when it failed to grant his motion to suppress.  "'[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.'" *State v. Featherstone*, 150 Ohio App.3d 24, 2002-Ohio-6028, at ¶10, quoting *State v. Vest*, Ross App. No. 00CA2576, 2001-Ohio-2394 (alteration sic).  "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."  *State v. Mills* (1992), 62 Ohio St.3d 357, 366 (citation omitted). Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594.  However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard.  *State v. Klein* (1991), 73 Ohio App.3d 486, 488.

**{¶55}**     A waiver of the Fifth Amendment right not to incriminate oneself must be made "voluntarily, knowingly and intelligently."  *Miranda v. Arizona* (1966), 384 U.S.

436, 444. Absent evidence that coercive police conduct overcame a defendant's will and critically impaired his capacity for self-determination, we presume that a defendant's decision to waive his Fifth Amendment privilege was voluntary. *State v. Dailey* (1990), 53 Ohio St.3d 88, 91-92. To determine whether a waiver was voluntary, the court must consider "the totality of the circumstances" and look specifically at the defendant's "age, mentality, and prior criminal experience * * *; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, at paragraph two of the syllabus, overruled on other grounds by *Edwards v. Ohio* (1978), 438 U.S. 911. Evidence that the defendant signed a written waiver of his rights is strong proof that the waiver is valid. *State v. Dennis*, 79 Ohio St.3d 421, 425, 1997-Ohio-372.

**{¶56}** Abdi contends that the waiver of *Miranda* rights obtained by Lt. Cooper was an involuntary waiver. And thus, Abdi argues the trial court erred by failing to suppress the resulting confession. Abdi contends that the following facts support a finding that his waiver was involuntary under the *Edwards* factors: he was only sixteen years old at the time of the interview;[3] he had only one prior experience with law enforcement; his parents were not present; and the length and nature of his detention before the interrogation began.

**{¶57}** Here, we find that the trial court did not err in denying Abdi's motion to suppress. The police interviewed Abdi multiple times, but only two interviews are relevant for purposes of Abdi's appeal. Lt. Cooper first interviewed Abdi on February

---

[3] We note that Abdi indicated to Lt. Cooper that his birthday was "1/1/1992," which would have made him seventeen at the time of the interview. As stated above, however, his actual birthday is December 26, 1992. Thus, Abdi was sixteen years old at the time of the interview.

15, 2009, at 4:39 a.m.  This interview lasted about an hour.  Lt. Cooper then interviewed Abdi a second time at 11:26 a.m. on the same day.  Abdi indicated that he could read and write the English Language.  Abdi also indicated that he was not taking prescribed medication and that he was not under the influence of alcohol or drugs.  At the beginning of the first interview, Lt. Cooper explained Adbi's *Miranda* rights, and Abdi waived them verbally and in writing.  Additionally, Abdi repeatedly stated to Lt. Cooper that he wanted to talk about the incident at the beginning of the first interview and again at the beginning of the second interview.

**{¶58}**     The *Edwards* factors Abdi cites do not support Abdi's argument that his waiver of *Miranda* rights was involuntary.  There is no evidence that Abdi's age prevented him from understanding the rights he was waiving.  Also, Abdi's inexperience with law enforcement does not demonstrate that his waiver was involuntary.  Abdi stated that he had been to "juvie" for carrying a concealed weapon, so he had some experience in the justice system.  Finally, Abdi did not have the right to have his parents present before waiving his *Miranda* rights.  See *State v. Bobo* (1989), 65 Ohio App.3d 685, 690 ("Though the greatest care must be taken to assure a juvenile's admissions are voluntary, parental presence is not constitutionally mandated.").

**{¶59}**     Abdi argues that the prolonged nature of his detention and interrogation and the fact that he had just been in an automobile accident demonstrate that his confession was involuntary.  The record, however, does not support Abdi's claim.  There is no evidence that the Athens County Sherriff's department deprived Abdi of sleep (or otherwise mistreated him) while he was in custody.  Additionally, Abdi stated that he

was "fine" when Lt. Cooper asked how he was feeling. And as stated above, Abdi

repeatedly indicated that he wanted to speak with Lt. Cooper about the incident.

{¶60}    Thus, Abdi waived his *Miranda* rights voluntarily, knowingly, and intelligently,

and the trial court correctly denied his motion to suppress. Accordingly, we overrule

Abdi's third assignment of error.

V.

{¶61}    In his fourth assignment of error, Abdi contends that the trial court erred by

allowing the State to introduce other acts evidence in violation of Evid.R. 404(B).

{¶62}    "The admission or exclusion of relevant evidence rests within the sound

discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, at paragraph two

of the syllabus.

{¶63}    "Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith. It may, however,

be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R.

404(B). For proper admissibility, the trial court must determine that: (1) the other act is

relevant to the crime in question, and (2) evidence of the other act is relevant to an

issue placed in question at trial. *State v. McCornell* (1993), 91 Ohio App.3d 141, 146,

citing *State v. Howard* (1978), 57 Ohio App.2d 1, 6; *State v. Strong* (1963), 119 Ohio

App. 31.

{¶64}    If a trial court inappropriately admits evidence in violation of Evid.R. 404(B),

we apply a non-constitutional harmless-error analysis. *State v. Murphy*, Scioto App. No.

09CA3311, 2010-Ohio-5031, at ¶80.  "A non-constitutional error is harmless when there is substantial other evidence to support the guilty verdict."  Id.

**{¶65}**     At trial, Deal testified that she overheard Osman stating that he wanted to rob William Evans.  Deal also testified that Abdi was standing near Osman when Osman stated this.  Abdi contends that "[t]he only real impact of [the witness's] testimony was to portray [Abdi] as somebody intent on robbing someone."

**{¶66}**     The trial court properly instructed the jury that "[a]ny evidence that the defendant committed wrongs or acts other than the offenses for which he is presently on trial was received only for a limited purpose.  Such evidence is not admissible to prove the character of the defendant in order to show action in conforming with that character. * * * However, you may consider such evidence as proof of motive, intent, preparation, plan and knowledge."  Trial Transcript, Day 4, 33-34.

**{¶67}**     As the trial court instructed, this evidence was admissible to show that the speaker (here, Osman) intended to commit a robbery that evening.  The evidence demonstrated Osman's intentions.  And Abdi was clearly one of Osman's co-conspirators.  The testimony is not impermissible propensity evidence just because Osman's plans changed, and Osman, Abdi, Honey, and Boler decided to rob someone other than Evans.  The evidence does not show that Osman or Abdi committed a robbery in the past, and, therefore, one or both of them must have committed the Osborne robbery.  Instead, the evidence shows Osman's intent on the evening in question.  Considering that Osman and Abdi went to Osborne's house and confronted Osborne with a pistol, Osman's statement regarding Evans was relevant to whether Osman, Abdi, Boler, and Honey intended to commit a robbery at Osborne's trailer.

**{¶68}** Even if we accept Abdi's argument that this was impermissible propensity evidence, we find any error harmless. The evidence against Abdi is substantial. Abdi confessed that he and his co-conspirators went to Osborne's trailer intent on committing a robbery. And multiple witnesses testified to Abdi's involvement in the robbery. Additionally, the trial court properly instructed the jury not to consider the evidence as propensity evidence.

**{¶69}** Accordingly, we overrule Abdi's fourth assignment of error.

VI.

**{¶70}** In his fifth assignment of error, Abdi contends that the evidence supporting his conviction is insufficient, and Abdi also contends that his conviction is against the manifest weight of the evidence. Because these arguments rely on distinct standards of review, we consider them separately.

A.

**{¶71}** Abdi first contends that his conviction for felony murder is not supported by sufficient evidence. When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

**{¶72}**     This test raises a question of law and does not allow the court to weigh the evidence.  *State v. Martin* (1983), 20 Ohio App.3d 172, 175.  Rather, this test "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson* at 319.  Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact.  *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

**{¶73}**     Abdi specifically points to the requirement that the State prove that Putnam's death was proximately caused by Abdi's actions.  Ohio's felony murder statute provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]"  R.C. 2903.02(B).  The jury found Abdi guilty of aggravated robbery in violation of both R.C. 2911.01(A)(1) and R.C. 2911.01(A)(3), which are felonies of the first degree.  R.C. 2911.01(C).

**{¶74}**     Under Ohio law, "it is irrelevant whether the killer is the defendant, an accomplice, or a third party."  *State v. Ford*, Franklin App. No. 07AP-803, 2008-Ohio-4373, at ¶32, citing *State v. Franklin*, Mahoning App. No. 06-MA-79, 2008-Ohio-2264, at ¶111.  "'[A d]efendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of [the d]efendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'"  *State v. Ervin*, Cuyahoga App. No.

87333, 2006-Ohio-4498, at ¶25, quoting *State v. Dixon*, Montgomery App. No. 18582, 2002-Ohio-541 (other citations omitted). See, also, *State v. Chambers* (1977), 53 Ohio App.2d 266, 268-69 (applying proximate cause standard to a similar involuntary manslaughter statute). "'It is not necessary that the accused [be] in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *State v. Lovelace* (1999), 137 Ohio App.3d 206, 219-20, quoting *State v. Losey* (1985), 23 Ohio App.3d 93, 96 (alteration sic).

**{¶75}**     Abdi asserts that there were two intervening criminal acts. Therefore, Abdi argues that he should not be held criminally liable for proximately causing Putnam's death. First, Abdi asserts that Perry actually fired the fatal bullet and that Abdi and Osman were in full flight from the trailer when Perry fired. According to Abdi, Perry no longer had any right to use deadly force in self defense, so Perry was committing a crime when he fired the 9mm pistol. Second, Abdi argues that Putnam went to Osborne's trailer to commit a crime (i.e., to buy drugs).

**{¶76}**     Neither of Abdi's arguments is persuasive. "Only a reasonably unforeseeable intervening cause will absolve one of criminal liability in this context." *State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359, at ¶25, citing *Lovelace* at 215. Even intervening criminal conduct does not prevent an offender's actions from being the proximate cause so long as that intervening conduct was foreseeable. See *Lovelace* at 219 (holding that police officer's criminal conduct during a high-speed chase, which directly caused a

motorist's death, was foreseeable, and, therefore, defendant could be held criminally liable for proximately causing the motorist's death).

**{¶77}** Thus, even if we accept Abdi's premise that Perry fired the fatal round illegally, Abdi's argument still fails. The prosecution introduced considerable evidence that allowed the jury to conclude that Abdi and Osman approached Osborne's trailer intent on robbing Osborne at gunpoint. This confrontation could foreseeably lead to a fight involving firearms. Whether an individual in the gunfight was justified in acting in self-defense or the defense of another is irrelevant to the issue of Abdi's guilt. The death of a bystander, such as Putnam, was foreseeable.

**{¶78}** Furthermore, we do not need to accept the premise that Perry was not justified in firing the 9mm pistol. Fussner testified that Osman and Abdi fired at Osborne as they retreated from the trailer. Given the timeline, the jury could have relied on this evidence to determine that Perry was still justified in firing his weapon.

**{¶79}** As to Putnam's intent to purchase drugs, the defense several times elicited testimony that tended to show Osborne was known as someone who sold drugs. The presence of a drug user seeking to purchase drugs from a drug dealer is a foreseeable circumstance. Even if Putnam intended to buy drugs from Osborne, Putnam was still an innocent bystander with respect to the armed robbery that led to the fatal gunfire.

**{¶80}** Accordingly, we find that Abdi's conviction for felony murder is supported by sufficient evidence. Specifically, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of murder proven beyond a reasonable doubt.

B.

**{¶81}** Abdi next contends that his conviction for felony murder is against the manifest weight of the evidence. When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus. See, also, *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith*, 2007-Ohio-502, at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-71; *Martin* at 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175 (citations omitted).

**{¶82}** "Even in our role as thirteenth juror we are constrained by the rule that the weight to be given evidence and the credibility to be afforded testimony are normally issues to be determined by the trier of fact. * * * The fact finder is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice." *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555, at ¶13 (citations omitted).

{¶83}     Here, Abdi confessed that he and his co-conspirators went to Osborne's trailer with firearms to commit a robbery.  The evidence was also clear that Abdi pushed a pistol into Osborne's gut when Abdi and Osman confronted Osborne.  The jury did not clearly lose its way when it concluded that Abdi committed aggravated robbery and that the death of a bystander was a foreseeable result of the aggravated robbery.  Thus, we do not find that Abdi's conviction is a manifest miscarriage of justice.  Substantial evidence supports his conviction for felony murder.

{¶84}     Accordingly, we overrule Abdi's fifth assignment of error.

VII.

{¶85}     In his sixth assignment of error, Abdi contends that the trial court erred when it allowed the State to call two of Abdi's co-conspirators to testify.  Abdi argues that he was prejudiced because the witnesses took the stand solely to invoke their Fifth Amendment privilege against self-incrimination.

{¶86}     As stated above, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court."  *Sage* at paragraph two of the syllabus.

{¶87}     The Supreme Court of Ohio has held that "[a] witness, even though he has previously indicated that he will refuse to testify on the ground that to do so would incriminate him, may be called as a witness."  *State v. Dinsio* (1964), 176 Ohio St. 460, 466.  "The court [does] not commit prejudicial error in allowing the prosecutor for the state to call the witness and to pursue his inquiry sufficiently to determine whether the witness intended to claim the privilege of immunity.  Once it [is] established that the witness intend[s] to claim his privilege of immunity, the court commit[s] error prejudicial to the defendant in permitting the prosecutor to continue his line of questioning, which

place[s] before the jury innuendo evidence or inferences of evidence which the state could not get before the jury by direct testimony from the witness*."* Id. at 468.

**{¶88}** As we have previously held, "*Dinsio* is not violated when questioning is brief and the prosecutor stops asking questions once it becomes clear that the witness will not answer." *State v. Bowers*, Hocking App. No. 06CA7, 2007-Ohio-3986, at ¶9.

**{¶89}** Here, the State's questioning ceased after Boler and Osman invoked their right against self-incrimination. Therefore, the trial court did not violate *Dinsio*.

**{¶90}** The State sought to use the assertions of privilege by Boler and Osman to establish that Boler and Osman were "unavailable" to testify. The State was required to show Boler's and Osman's unavailability in order to admit certain statements against interest under Evid.R. 804(B)(3). Specifically, the State wanted to introduce Fussner's testimony that Boler stated to Osman that Boler would have "his" head in the sights of Boler's rifle; Deal's testimony that Osman stated that he intended to rob William Evans; and an undetermined statement by Boler where the trial court sustained an objection in mid-answer.

**{¶91}** "'Unavailability as a witness' includes any of the following situations in which the declarant: (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]" Evid.R. 804(A)(1). "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *State v. Keairns* (1984), 9 Ohio St.3d 228, at paragraph three of the syllabus. Thus, under *Keairns*, the State was obliged to demonstrate the unavailability of Boler and Osman through testimony.

{¶92}   Abdi contends that any finding of unavailability should have been done out of the hearing of the jury pursuant to Evid.R. 104(C).  Abdi, however, made no such argument before the trial court.  The jury was properly instructed to draw no conclusion from an individual's assertion of Fifth Amendment privilege.  And "'[a] presumption always exists that the jury has followed the instructions given to it by the trial court.'" *Murphy* at ¶81, quoting *Pang v. Minch* (1990), 53 Ohio St.3d 186, at paragraph four of the syllabus.  Thus, the trial court did not abuse its discretion in allowing the State to call Boler and Osman to the stand to assert their Fifth Amendment right against self-incrimination.

{¶93}   Accordingly we overrule Abdi's sixth assignment of error.

VIII.

{¶94}   In his seventh assignment of error, Abdi contends that the trial court erred when it denied his motion to compel disclosure of grand jury testimony.

{¶95}   "Disclosure of grand jury testimony, other than that of the defendant and co-defendant, is controlled by Crim.R. 6(E)[,] * * * and the release of any such testimony for use prior to or during trial is within the discretion of the trial court." *State v. Greer* (1981), 66 Ohio St.2d 139, at paragraph one of the syllabus.

{¶96}   Crim.R. 6(E) provides: "A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury * * * but may disclose such matters only * * * when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

{¶97}     "'Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy.'" *State v. Greer* (1981), 66 Ohio St.2d 139, 148, quoting *State v. Patterson* (1971), 28 Ohio St.2d 181, at paragraph three of the syllabus.

{¶98}     "'[W]hen a defendant speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination by revealing contradictions, the trial court does not abuse its discretion by finding the defendant had not shown a particularized need.'" *State v. Shadoan*, Adams App. No. 03CA764, 2004-Ohio-1756, at ¶28, quoting *State v. Mack*, 73 Ohio St.3d 502, 508, 1995-Ohio-273 (other quotation omitted). "The claim that a witness's grand jury testimony may differ from trial testimony is insufficient to show a particularized need." *State v. Horger*, 170 Ohio App.3d 383, 2007-Ohio-665, at ¶10, citing *State v. Henness* (1997), 79 Ohio St.3d 53, 62, 1997-Ohio-405.

{¶99}     Here, Abdi speculated before the trial court, and again on appeal, that Osborne may have given contradictory testimony before the grand jury.  Abdi contends that Osborne gave other contradictory statements suggesting that Osman, rather than Abdi, had pointed the pistol in Osborne's gut at the doorway confrontation.

{¶100}     We find that the trial court did not abuse its discretion.  Speculation that Osborne's grand jury testimony may have revealed contradictions is insufficient to justify disclosure of grand jury testimony.  Moreover, Osborne's inconsistent statement indicating Osman (and not Abdi) had threatened Osborne with a gun was admitted into

evidence.  Thus, the jury was aware that Osborne's account of events had changed at one point.  Therefore, Abdi suffered no prejudice when the trial court denied his motion to compel disclosure of the grand jury testimony.  Accordingly, Abdi did not show a particularized need for disclosure of the grand jury testimony, and the trial court correctly denied Abdi's motion.

**{¶101}**    Therefore, we overrule Abdi's seventh assignment of error.

IX.

**{¶102}**    In his eighth assignment of error, Abdi contends that the trial court erred when it failed to grant appropriate weight to his lack of criminal history and youth during sentencing.

**{¶103}**    "Appellate courts 'apply a two-step approach [to review a sentence].  First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.  If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.'"  *State v. Smith*, Pickaway App. No. 08CA6, 2009-Ohio-716, at ¶8, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, at ¶4 (alterations sic).  See, also, *State v. Voycik*, Washington App. Nos. 08CA33 & 08CA34, 2009-Ohio-3669, at ¶8.

**{¶104}**    In analyzing whether Abdi's sentences are contrary to law, "[t]he only specific guideline is that the sentence[s] must be within the statutory range[.]"  *State v. Welch*, Washington App. No. 08CA29, 2009-Ohio-2655, at ¶7, quoting *State v. Ross*, Adams App. No. 08CA872, 2009-Ohio-877, at ¶10.  See, also, *Voycik* at ¶9.  In this case, Abdi raises no argument for the proposition that the trial court sentenced him to a term of

imprisonment outside of the statutory range. Rather, Abdi contends that the trial court failed to consider his lack of criminal history and youth as compared to his co-conspirators Osman and Boler.

{¶105}    However, we find that the trial court was fully aware of Abdi's youth and lack of criminal history prior to sentencing. The trial court was entitled to give greater weight to contrary arguments advanced by the State. At sentencing, Abdi's counsel urged the court to consider that Abdi was sixteen years old at the time of the incident and that Abdi did not have a lengthy juvenile criminal record. The trial court had discretion to find the nature and characteristics of the offense more persuasive than the mitigating factors of youth and lack of criminal history. The trial court was not required to explicitly state that it considered Abdi's youth and lack of criminal history when deciding on a proper sentence. See *State v. Koclan*, Ottawa App. No. OT-07-018, 2008-Ohio-74, at ¶10 ("[I]n exercising its discretion, sentencing courts must consider the provisions listed in R.C. 2929.11 and 2929.12 as statutory factors to determine an appropriate felony sentence. * * * [N]onetheless, a trial court is not required to state any findings on the record in considering these factors.") (citations omitted).

{¶106}    In its judgment entry, the trial court stated: "The court has considered the record, oral statements, any victim impact statements, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12. The Court has considered the factors under R.C. 2929.13." September 23, 2009 Judgment Entry at 2.

{¶107}    Thus, the record demonstrates that the trial court considered all relevant factors when it sentenced Abdi.  Accordingly, we overrule Abdi's eighth assignment of error.

X.

{¶108}    For his ninth assignment of error, Abdi contends that the trial court erred by sentencing him to consecutive sentences without making the required judicial findings of fact under R.C. 2929.14(E)(4).  The Supreme Court of Ohio held that those required findings were unconstitutional.  *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph three of the syllabus, citing *Apprendi v. New Jersey* (2000), 530 U.S. 466 and *Blakely v. Washington* (2004), 542 U.S. 296.

{¶109}    Abdi contends that this ruling is in conflict with a recent ruling from the Supreme Court of the United States.  *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711.  Abdi is correct that, under *Ice*, the Supreme Court of Ohio had no need to strike down R.C. 2929.14(E)(4).  Id. at 714-15.  Also, Abdi is correct that the Supreme Court of the United States is final arbiter of the United States Constitution.  See *Minnesota v. National Tea Co.* (1940), 309 U.S. 551, 557; *State v. Storch* (1993), 66 Ohio St.3d 280, 291.

{¶110}    However, the Supreme Court of Ohio has rejected Abdi's argument.  "The United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160[,] does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in [*Foster*.]"  *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, at paragraph two of the syllabus.

{¶111}    Accordingly, we overrule Abdi's ninth assignment of error.

XI

**{¶112}**     In conclusion, we sustain Abdi's first assignment of error and overrule all others.  The judgment of the trial court is reversed in part and affirmed in part.  We remand this cause to the trial court to consider (1) whether Abdi committed felony murder and aggravated robbery separately or (2) whether he committed the crimes with a separate animus.

                                                **JUDGMENT REVERSED, IN PART,
                                                AND AFFIRMED, IN PART,
                                                AND CAUSE REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED, IN PART, AFFIRMED, IN PART, AND THIS CAUSE BE REMANDED to the trial court for further proceedings consistent with the opinion. Appellant and Appellee shall pay equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


McFarland, J.:  Concurs in Judgment and Opinion.
Harsha, P.J.:  Concurs in Judgment and Opinion as to Assignments of Error II, III, V – IX; Concurs in Judgment Only as to Assignments of Error I and IV.


For the Court


BY: _____
         Roger L. Kline, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**