[Cite as *State v. Jacobs*, 2013-Ohio-1502.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA26 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| JIMMIE E. JACOBS, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 03/28/13** |

_____

APPEARANCES:

William R. Gallagher, Arenstein and Gallagher, Cincinnati, Ohio, for
Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for
Appellee.

_____

McFarland, P.J.

{¶1} Appellant, Jimmie Jacobs, appeals the conviction and sentence
entered against him by the Highland County Court of Common Pleas after a
jury found him guilty of aggravated burglary and felonious assault, along
with two firearm specifications. On appeal, Appellant contends that 1) the
trial court erred in admitting into evidence his statements made after he had
invoked his right to counsel; 2) the trial court erred in limiting his cross
examination of the complaining witness thereby denying him his
constitutional right of confrontation; 3) the trial court erred in refusing to

permit a witness to testify to his opinion as to truthfulness of a government witness thus depriving defendant of his right to a fair trial and compulsory process; 4) the trial court erred by refusing to admit evidence of a witness's drug use and mental illness thus depriving defendant of his right to a fair trial and compulsory process; 5) the trial court erred in entering judgments of conviction and sentences on both felonious assault and aggravated burglary in this case as they are allied offenses in violation of R.C. 2941.25 and the double jeopardy clause prohibitions against multiple punishments; 6) the trial court erred in entering consecutive sentences on the gun specifications from a single transaction.

{¶2}With regard to Appellant's first assignment of error, we conclude Appellant knowingly and intelligently waived his rights when he re-initiated conversation with law enforcement. As such, the trial court did not err in denying Appellant's motion to suppress, nor did it err in admitting his statements into evidence at trial. Thus, Appellant's first assignment of error is overruled.

{¶3}As to Appellant's second and fourth assignments of error, because we find no abuse of discretion on the part of the trial court in excluding the evidence at issue, we find no merit to these assignments of error and they are both overruled. Likewise, as to Appellant's third

assignment of error, we conclude that the officer's proffered testimony was an impermissible attempt to introduce character evidence via extrinsic evidence, which is barred by Evid.R. 404 and 405, and which did not meet the requirements for admission under Evid.R. 608(B). Thus, we cannot conclude that the trial court erred in excluding this testimony at trial. As such, Appellant's third assignment of error is overruled.

{¶4}With regard to Appellant's fifth assignment of error, we have concluded that aggravated burglary and felonious assault are allied offenses of similar import which should have merged for purposes of sentencing. As such, this matter is remanded for resentencing, at which the State must elect which offense it wishes to proceed upon for sentencing and conviction. Therefore, Appellant's fifth assignment of error is sustained. Finally, in light of our finding that aggravated burglary and felonious assault are allied offenses of similar import, and as such that Appellant could only be convicted for one of the offenses, the trial court erred in imposing consecutive three year sentences for each of Appellant's firearm specifications, under R.C. 2929.14(D)(1)(g). Accordingly, Appellant's sixth assignment of error is sustained and this matter is remanded for resentencing with respect to the imposition of the firearm specification.

{¶5}In light of the foregoing, the decision of the trial court convicting and sentencing Appellant for both aggravated burglary and felonious assault, is reversed, and this matter is remanded for resentencing.

## FACTS

{¶6}On December 15, 2010, Appellant, Jimmie Jacobs, was arrested in connection with the shooting of victim, Jonathan Harris, at Harris' apartment located in the back of J&J Automotive in Highland County, Ohio. Upon being questioned by Patrolman Jeff Murphy and Detective Ron Priest with the Hillsboro Police Department while in an interview room at the Highland County Justice Center, Appellant confessed to having entered the victim's residence and shooting him with a .357 chrome revolver.[1]

{¶7}As a result, on March 1, 2011, Appellant was indicted on attempted murder, in violation of R.C. 2923.02(A) and 2903.02(B), felonious assault, a second degree felony in violation of R.C. 2903.11(A)(2), and aggravated burglary, a first degree felony in violation of R.C. 2911.11(A)(1). Additionally, Appellant was charged with firearm specifications pursuant to R.C. 2941.145 on each charge. Appellant pled not guilty to the charges and the matter proceeded to trial.

---

[1] The video and audio recording system in the interview room was not activated during the interview, unbeknownst to the investigating officers. As such, this information comes from testimony of the officers, based upon notes they made soon after the interview took place.

{¶8}Several pre-trial motions were filed, including a motion to suppress by the defense and a motion in limine by the State. The trial court overruled the defense's motion to suppress, which sought suppression of the statements made by Appellant during his interview with Murphy and Priest on the night of the shooting. The trial court, however, granted the State's motion in limine. In particular, the trial court ruled that information involving a loan made between Appellant and victim was to be limited, and that there was to be no testimony or evidence presented as to how the victim used the money. The trial court further ruled that the defense could not offer testimony of a Xenia police officer related to a prior incident with the victim.

{¶9}The matter was tried to a jury on August 31, and September 1, 2011. The State presented multiple witnesses in support of its case. Of importance, the victim, Jonathan Harris, testified that Appellant, a neighbor of Harris', entered Harris' residence located in the back of J&J Automotive on the evening of December 15, 2010. Harris testified that Appellant had a gun in his hand, stated he was going to kill Harris, put the gun to his head and then pulled the trigger. Mark Puckett, a neighbor who knows both Harris and Appellant, testified that he was on the phone with Harris when Appellant entered the residence and that he heard Harris call Appellant by

name and then heard two shots. Further, Brian Holbrook, an employee of J&J Automotive, testified that he saw Appellant enter the residence that evening as Holbrook was leaving. He further testified that upon returning not long after, he found Harris bloody and calling for help, and that he called 911.

{¶10}Patrolman Jeff Murphy and Detective Ron Priest, both with the Hillsboro Police Department, testified regarding their interview of Appellant at the Highland County Justice Center on the night of the shooting. Both men essentially testified that Appellant stated that he had an issue with the victim over money he had loaned him. They further testified that Appellant stated that he went to the victim's apartment and shot him with a .357 chrome revolver.

{¶11}Finally, the State presented the testimony of Heather Williams and Max Larijani, employed at BCI&I. Larijani., who was qualified as an expert in gunshot residue analysis, testified that there was gunshot primer residue identified on samples taken from Appellant's left back hand and the palm of his right hand. Williams, who was qualified as an expert in bullet/projectile analysis, testified that the evidence she tested indicated the bullet fired had come from a .380 auto caliber or greater. She further testified that a .357 caliber is greater than a .380 caliber.

{¶12}Additionally, the defense proffered one witness and presented three, including Appellant himself.  Appellant denied having confessed to shooting Harris during the interview with law enforcement.  Instead, Appellant testified that he simply went to Harris' apartment to confront him in response to Harris making a threat against his wife.  He testified that he took a cane with him, which he used to walk.  He further testified that he entered Harris' apartment after knocking and being told to come in.  He testified that Harris was on the phone with Mark Puckett and that while he was still on the phone, Appellant leaned in close in order to be as threatening as possible and to tell him that he could not make threats against his wife.  He further testified that when Harris reached for something behind his back, Appellant hit Harris' hand with his cane, that they both fell down and that he then heard one shot.  Finally, he testified that he left and went home because he was frightened, and that he did not call the police.

{¶13}After hearing the evidence, the jury found Appellant guilty of aggravated burglary and felonious assault.  As such, the attempted murder charge was nolled and dismissed, and the trial court sentenced Appellant to eight years on each count, as well as three years on each firearm specification, all to be served consecutively for a total prison term of twenty-

two years.  It is from this judgment and sentence that Appellant now brings

his timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE
        STATEMENTS OF JACOBS AFTER HE HAD INVOKED HIS
        RIGHT TO COUNSEL WHICH VIOLATES HIS RIGHTS
        GUARANTEED HIM BY THE FIFTH AND FOURTEENTH
        AMENDMENTS TO THE UNITED STATES CONSTITUTION
        AND ARTICLE ONE OF THE OHIO CONSTITUTION.

II.     THE TRIAL COURT ERRED IN LIMITING DEFENDANT'S
        CROSS EXAMINATION OF THE COMPLAINING WITNESS
        THEREBY DENYING HIM HIS CONSTITUTIONAL RIGHT OF
        CONFRONTATION AS GUARANTEED BY THE OHIO AND
        UNITED STATES CONSTITUTIONS.

III.    THE TRIAL COURT ERRED IN REFUSING TO PERMIT A
        WITNESS TO TESTIFY TO HIS OPINION AS TO
        TRUTHFULNESS OF A GOVERNMENT WITNESS THUS
        DEPRIVING DEFENDANT OF HIS RIGHT TO A FAIR TRIAL
        AND COMPULSORY PROCESS AS GUARANTEED BY THE
        OHIO AND FEDERAL CONSTITUTIONS.

IV.     TRIAL COURT ERRED BY REFUSING TO ADMIT EVIDENCE
        OF A WITNESS'S DRUG USE AND MENTAL ILLNESS THUS
        DEPRIVING DEFENDANT OF HIS RIGHT TO A FAIR [SIC]
        AND A COMPULSORY PROCESS AS GUARANTEED BY THE
        OHIO AND UNITED STATES CONSTITUTIONS.

V.      THE TRIAL COURT ERRED IN ENTERING JUDGEMENTS [SIC]
        OF CONVICTION AND SENTENCES ON BOTH FELONIOUS
        ASSAULT AND AGGRAVATED BURGLARY IN THIS CASE AS
        THEY ARE ALLIED OFFENSES IN VIOLATION OF ORC
        2941.25 AND THE DOUBLE JEOPARDY CLAUSE
        PROHIBITIONS AGAINST MULTIPLE PUNISHMENTS SET
        FORTH IN OHIO STATE AND FEDERAL CONSTITUTION [SIC].

VI.    THE TRIAL COURT ERRED IN ENTERING CONSECUTIVE
       SENTENCES ON THE GUN SPECIFICATIONS FROM A SINGLE
       TRANSACTION."

ASSIGNMENT OF ERROR I

{¶14}In his first assignment of error, Appellant contends that the trial court erred in admitting into evidence statements that he made after he had invoked his right to counsel.  Appellant essentially argues that the trial court erred in denying his pre-trial motion to suppress, and as such, allowing his confession to be admitted at trial.  Appellant further contends that the issue presented is whether the police must stop asking questions beyond booking questions once an arrestee requests counsel.  The State responds by arguing that Appellant initiated the discussion which led to his confession, thereby waiving his previously invoked right to counsel and right to remain silent.

{¶15} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., citing *State*

*v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8; citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997). See, also, *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Preliminarily, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Crim.R. 12(F).

{¶16}Prior to initiating a custodial interrogation, law enforcement must "inform an accused 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " *State v. Ulery*, 4th Dist. No. 07CA28, 2008-Ohio-2452, ¶ 7; quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602 (1966). Neither party in this case argues that Appellant was not subject to a custodial interrogation or that there was no need to have given him the *Miranda* warnings.  Thus, no further analysis is required on this issue.

{¶17}To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any

interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds), citing *Miranda.* However, contrary to the second prong in *Edwards*, the Supreme Court recently held that the prosecution "does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis v. Thompkins*, —— U.S. ——, 130 S.Ct. 2250, 2261 (2010) (Citation omitted). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id. at 2262. That is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Id.

{¶18}When dealing with a claim that law enforcement continued to interrogate the accused after he invoked his right to counsel, the first question is "whether the accused actually invoked his right to counsel."

*Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490 (1984). "It is fundamental that once a suspect invokes his right to counsel, all interrogation must cease." *State v. Colquitt*, 188 Ohio App.3d 509, 2010-Ohio-2210, 936 N.E.2d 76, ¶ 12, citing *State v. Turvey*, 84 Ohio App.3d 724, 732, 618 N.E.2d 214 (4th Dist. 1992); *State v. Jobe*, 6th Dist. No. L-07-1413, 2009-Ohio-4066, ¶ 67. "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994); quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204 (1991). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Court's] precedents do not require the cessation of questioning." Id. "Rather, the suspect must unambiguously request counsel." Id. As the Supreme Court observed, " 'a statement either is such an assertion of the right to counsel or it is not.' " Id., quoting *Smith v. Illinois* (1984), 469 U.S. 91, 97-98, 105 S.Ct. 490 (1984).

{¶19}Second, if we find that the accused did invoke his right to counsel, we "may admit his responses to further questioning only on finding

that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois* at 95; citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880 (1981). "[A]n accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* at 484-485; See, also, *State v. Van Hook*, 39 Ohio St.3d 256, 530 N.E.2d 883 (1988). "[I]nquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in *Edwards* [*v. Arizona*]." *Oregon v. Bradshaw* (1983), 462 U.S. 1039, 1045, 103 S.Ct. 2830 (1983). Though the Supreme Court declined to fully define the term "initiate," it did note that "a willingness and a desire for a generalized discussion about the investigation * * * not merely a necessary inquiry arising out of the incidents of the custodial relationship" was sufficient to show initiation. *Bradshaw* at 1045–1046.

{¶20}Here, the trial court found and it is clear from the record that Appellant was advised of his *Miranda* rights. This issue is not in dispute. Further, the fact that Appellant made an unequivocal request for counsel

upon being Mirandized is not in dispute.  At issue, however, is whether Appellant subsequently waived his right to counsel and to remain silent after initially invoking those rights, by re-initiating conversation with the officers regarding the incident.

{¶21}In the case sub judice, the trial court made explicit findings of fact when it denied Appellant's motion to suppress. Specifically, the trial court found that Appellant, while in custody and while being read his *Miranda* rights, stated that he wanted the right to have an attorney present during questioning.  The trial court further found that upon being asked by law enforcement for the name and contact information of his attorney, as well as the name of anyone that might be available to care for the dogs that were left at his residence, Appellant twice mentioned the "neighbors across the street," despite being told that they were not discussing the neighbors across the street or the incident. The trial court also found that Appellant then stated that the officers could ask him questions but he just might not answer them, and that when asked if he wanted to answer questions, he nodded his head affirmatively.

{¶22}Based upon these facts, the trial court determined that "there was no interrogation of the Defendant after he invoked his right to counsel until the Defendant himself stated they could ask him questions and he

might answer them and he might not, and after being asked if that meant he was willing to answer questions he nodded his head yes." The trial court further found that Appellant knowingly, intelligently, and voluntarily waived his right to counsel and against self incrimination, and that to the extent Appellant's version of the conversation differed from that of the officers, "the Court has determined that the officers' version is more credible than that of the Defendant."

{¶23}After careful review, we conclude that the trial court's findings are supported by the record. After Appellant's unequivocal invocation of the right to counsel, Appellant re-initiated the interrogation by stating that the officers could ask him questions, though he might not answer them, and by nodding in the affirmative when he was then asked if he wanted to answer questions. Thus, we conclude that the interrogation was free to continue at that point, which it did, resulting in Appellant confessing to entering the victim's residence with a gun in order to confront him about a loan that had not been repaid, and ultimately shooting the victim. This leads to the conclusion that Appellant knowingly and intelligently waived his rights when he spoke with law enforcement. Thus, the trial court was correct to deny Appellant's motion to suppress, and we therefore overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR II AND IV

{¶24}We address Appellant's second and fourth assignments of error in conjunction with one another as they are interrelated. In his second assignment of error, Appellant contends that the trial court erred in limiting his cross examination of the victim, which he asserts denied him his constitutional right of confrontation as guaranteed by the Ohio and United States Constitutions. Specifically, Appellant questions whether a cross examiner is entitled to challenge a negative response with contradicting evidence when a witness denies mental illness or drug abuse. In his fourth assignment of error, Appellant contends that the trial court erred by refusing to admit evidence of the victim's drug use and mental illness, thus depriving Appellant of his right to a fair trial and compulsory process. Under this assignment of error, Appellant questions whether it is error to prevent the introduction of evidence contradicting a witness's denial of drug use and mental illness.

{¶25}In response to Appellant's second and fourth assignments of error, the State contends that the trial court was correct in adhering to its earlier ruling on a motion in limine and in limiting the cross examination of the victim to those things which were relevant to the crime. Further, the State argues that Appellant's trial counsel did not possess, nor actually

attempt to admit any extrinsic evidence, and that even if the exclusion of such alleged evidence was in error, it was harmless error in light of the overwhelming evidence of Appellant's guilt, specifically, Appellant's confession.

{¶26} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.); citing *State v. Powell*, 177 Ohio App.3d 825, 2008-Ohio-4171, 896 N.E.2d 212, ¶ 33 (4th Dist).

{¶27} Abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Herring*, 94 Ohio St.3d 246, 255, 2002-Ohio-796, 762 N.E.2d 940; *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When an appellate court applies this standard, it can not substitute its judgment for that of the trial court. *State v. Jeffers*, 4th Dist. No. 08CA7, 2009-Ohio-1672, ¶ 12; *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991); citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶28}In these assignments of error, which we address together, Appellant contends that he should have been permitted to impeach the victim's trial testimony stating that he had not used cocaine on the day of the shooting, and had not suffered from depression or psychotic episodes prior to the shooting. Appellant argues that when the victim denied these allegations, he should have been permitted to impeach the victim by introducing extrinsic evidence in the form of medical records and deposition testimony, which Appellant claims contradicted the victim's answers given at trial.

{¶29}Appellant submits that the admission of such extrinsic evidence was proper under Evid.R. 616(B), "Methods of impeachment," which permits a witness to be impeached either by examination or by extrinsic evidence, when attempting to prove a sensory or mental defect with respect to the capacity, ability, opportunity to observe, remember or relate. However, the trial court more appropriately categorized the attempt to introduce this evidence as "character assassination" of the victim, and excluded the proffered testimony and evidence. For the following reasons, we conclude that the trial court properly exercised its discretion in excluding this evidence.

{¶30}Evid.R. 404 provides that evidence of a witness's character is generally inadmissible. Evid.R. 405 provides that when admissible, inquiry is allowable only into "relevant" specific instances of conduct and that proof of specific instances of conduct may only be made "[i]n cases in which character or a trait of character of a person is an essential element of a charge." More specifically, Evid.R. 404(A)(2) provides, with respect to character of the victim, that "[e]vidence of a *pertinent* trait of character of the victim" is admissible. (Emphasis added). Here, however, we find that evidence of drug use or prior depression on the part of the victim has no *pertinence* or *relevance* with regard to whether he was the victim of a shooting, and as such, would not have been properly admitted as evidence under these rules.

{¶31}Additionally, Evid.R. 608 governs evidence of character and conduct of a witness and provides in (B) that "[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence." " 'Other than the Evid.R. 609 exception for certain criminal convictions, a witness's credibility may not be impeached by extrinsic proof of special instances of his conduct; such conduct may inquired into only by the intrinsic means of

cross-examination  within the guidelines set forth in Evid.R. 608(B). Criminal activities not resulting in conviction cannot ordinarily form the basis for an attack upon a witness's credibility' " *State v. Hurt*, 2nd Dist. No. 20155, 2004-Ohio-4266, ¶ 11; citing *State v. Skatzes*, 2nd Dist. No. 15848, 2003-Ohio-516, ¶ 183.

{¶32} " 'Furthermore, the answers given in response to questions about specific instances of conduct on cross-examination must be accepted by the examiner with no further attempt to establish the conduct through extrinsic evidence.' " *State v. Reed*, 110 Ohio App.3d 749, 754, 675 N.E.2d 77 (4th Dist. 1996); citing *State v. Gardner*, 59 Ohio St.2d 14, 19, 391 N.E.2d 337 (1979).  Thus, we conclude that attempting attack the victim's character by pointing to specific prior conduct through the use of extrinsic evidence in the form of medical records would be a prohibited method under Evid.R. 608(B).

{¶33} Finally, Evid.R. 613 governs impeachment by self contradiction.  Because Appellant does not argue admission was proper under this rule, we only address it superficially by simply noting that we likewise conclude admission of the evidence at issue would be improper under this rule as well.  We primarily reach this conclusion based upon Evid.R. 613(B)(2)'s requirement that the "subject matter of the statement"

be a "fact that is of consequence to the determination of the action other than the credibility of witness[.]" Here, we do not believe that the victim's credibility or character for truthfulness is a fact of consequence to the determination of whether Appellant, by Appellant's own admission, shot the victim. Thus, we find Evid.R. 613 to be as equally inapplicable as Evid.R. 404, 405 and 608.

{¶34} In light of the foregoing, we find no abuse of discretion on the part of the trial court in excluding the evidence at issue. As such, we cannot conclude that Appellant was denied his constitutional rights of confrontation, to compulsory process, and to a fair trial. Thus, we find no merit to Appellants' second and fourth assignments of error and therefore, they are both overruled.

## ASSIGNMENT OF ERROR III

{¶35} In his third assignment of error, Appellant contends that the trial court erred in refusing to permit a witness to testify regarding his opinion as to truthfulness of the victim, which Appellant claims deprived him of his right to a fair trial and compulsory process as guaranteed by the Ohio and Federal Constitutions. Specifically, Appellant questions whether a witness should have been barred from testifying regarding his opinion as to the truthfulness of the victim because of the witness's status as a police

officer.  The State responds by arguing that the trial court's exclusion of this opinion testimony was proper, and that even if it was in error, such exclusion was not prejudicial to Appellant considering that Appellant confessed to shooting the victim.

{¶36}As this assignment of error also deals with the trial court's exclusion of certain evidence at trial, we refer to the standard of review set forth under our analysis of Appellant's second and fourth assignments, with a simple reminder that a trial court has broad discretion in the admission or exclusion of evidence and a trial court's judgment will not be reversed absent a clear showing of an abuse of that discretion, as well as material prejudice to the defendant.  See, *State v. Green* and *State v. Powell*, supra.

{¶37}A review of the record reveals that the testimony of Xenia police officer, Chris Stutes, was the subject of a pre-trial motion in limine filed by the State, which motion was granted by the trial court.  During the hearing on the motion in limine, defense counsel explained that it sought to introduce the officer's testimony "solely for the purpose of expressing an opinion as to whether or not Mr. Harris is an honest person."  Defense counsel argued that such testimony was permitted under Evid.R. 608(A), as opinion testimony as to the victim's character, as well as Evid.R. 608(B), which deals with specific instances of conduct in regards to evidence of

character and conduct of a witness. The trial court disagreed, reasoning that any opinion offered by the officer would have to be based on specific instances of conduct, which cannot be proved by extrinsic evidence under Evid.R. 608(B), and that testimony of the officer related to his prior involvement with the victim would be prohibited extrinsic evidence.

{¶38}Defense counsel again attempted to introduce Officer Stutes as a witness at trial, arguing at that time that his testimony was permissible under Evid.R. 404(A)(2) and 405(A), as "opinion bearing upon the pertinent character trait of Jonathan Harris; or engaging in unprovoked acts of violence." The proffered testimony essentially consisted of Officer Stutes opinion that the victim, Harris, was untruthful and had engaged in unprovoked acts violence, testimony which was primarily based upon an incident with law enforcement that occurred in 2005, for which Harris was never convicted. The trial court adhered to its prior ruling on the motion in limine and excluded the proffered testimony, reasoning that the opinion was based upon Harris' involvement in an incident for which he was never convicted, and that the officer might be perceived as an expert, which would result in undue prejudice against Harris.

{¶39}Evid.R. 404, which governs the admission of character evidence, provides in pertinent part as follows:

(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

* * *

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

Further, Evid.R. 405 governs methods of proving character and provides as follows:

(A) Reputation or opinion

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-

examination, inquiry is allowable into relevant specific instances of conduct.

(B) Specific instances of conduct

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

{¶40} Thus, Evid.R. 404(A) generally limits evidence of a person's character, or certain character traits, subject to certain exceptions. In particular, with respect to the character of a victim, Evid.R. 404(A)(2) permits evidence of "a pertinent trait of character of the victim * * *" Here, we find that even if the victim had a character trait of "engaging in unprovoked acts of violence," as argued by the defense, such trait fails to be "pertinent" or "relevant" in the absence of a self-defense argument on the part of the defendant. Of importance, defense counsel conceded prior to instructions being provided that the evidence did not support a jury instruction on self defense. *State v. Depew*, 4th Dist. No. 00CA2562, 2002-Ohio-6158, ¶ 48 (evidence submitted for the purpose of proving self defense was rendered irrelevant where self defense was not at issue); *State v. White*, 4th Dist. No. 03CA2926, 2004-Ohio-6005, ¶ 72 ("* * * evidence that is not relevant is not admissible." ); citing Evid.R. 402.

{¶41}We now turn our attention to Appellant's argument that this evidence should have been admitted under Evid.R. 608, which provides as follows:

"(A) Opinion and reputation evidence of character

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(B) Specific instances of conduct

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning

the character for truthfulness or untruthfulness of another

witness as to which character the witness being cross-examined

has testified. * * *"

The trial court concluded, and rightfully so, that the officer's proffered

"opinion testimony" was essentially based upon a specific instance of

conduct of the victim that occurred several years prior, an incident for which

Appellant was never convicted. The trial court further concluded that the

officer's testimony would have constituted "extrinsic evidence," which,

except for evidence of actual convictions, is barred by Evid.R. 608(B).

{¶42}After reviewing the record, we agree with the trial court's

conclusions and therefore find no abuse of discretion in the exclusion of this

evidence. Further, and as set forth above, we must be mindful that Evid.R.

401 defines "relevant evidence" as "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the

evidence." We cannot conclude that a victim's alleged character of

untruthfulness, or character trait for "engaging in unprovoked acts of

violence," is even relevant, bearing in mind the absence of a self defense

argument on the part of Appellant. As such, and in light of our conclusion

that the trial court did not abuse its discretion in excluding Officer Stutes'

testimony, Appellant's third assignment of error is overruled.

ASSIGNMENT OF ERROR V

{¶43}In his fifth assignment of error, Appellant contends that the trial

court erred in entering judgments of conviction and sentences on both

felonious assault and aggravated burglary in violation of R.C. 2941.25 and

the double jeopardy clause, claiming that they are allied offenses of similar

import.  The State contends that aggravated burglary and felonious assault

are not allied offenses and as such did not merge for purposes of sentencing.

{¶44}When determining whether multiple offenses should have

merged under R.C. 2941.25, "[o]ur standard of review is de novo." *State v.*

*Buckta*, 4th Dist. No. 96 CA 3, 1996 WL 668852 (Nov. 12, 1996); See, also,

*Coleman v. Davis*, 4th Dist. No. 10CA5, 2011-Ohio-506, ¶ 16 (" 'We review

questions of law de novo.' "); quoting *State v. Elkins*, 4th Dist. No. 07CA1,

2008-Ohio-674, ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112

Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to

constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶45} As the Supreme Court recently explained in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Johnson* at ¶ 47. The initial question "is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." *Johnson* at ¶ 48 (Emphasis added).  "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." Id.  Next, if the answer to the first question is yes, we must then look to the facts of the case and determine whether the two offenses actually were committed by the same conduct, "i.e., 'a single

act, committed with a single state of mind.' " *Johnson* at ¶ 49; quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

{¶46} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge." *Johnson* at ¶ 51 (Emphasis added).

{¶47}Here, Appellant was convicted of aggravated burglary, a first degree felony in violation of R.C. 2911.11(A)(1), and felonious assault, a second degree felony in violation of 2903.11(A)(2), each with R.C. 2941.145 firearm specifications.  R.C. 2911.11, which defines aggravated burglary, provides in pertinent part as follows:

> "(A) No person, by force, stealth, or deception, shall trespass in
>
> an occupied structure or in a separately secured or separately
>
> occupied portion of an occupied structure, when another person
>
> other than an accomplice of the offender is present, with
>
> purpose to commit in the structure or in the separately secured

or separately occupied portion of the structure any criminal

offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict

physical harm on another;"

R.C. 2903.11(A)(2), which defines felonious assault, provides in pertinent

part as follows:

"(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to

another's unborn by means of a deadly weapon or dangerous

ordnance."

{¶48}Ohio cases have consistently held that aggravated burglary and

felonious assault are not allied offenses of similar import. *State v. Barker*,

183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, ¶ 18 (2nd Dist);

citing *State v. Johnson*, 5th Dist. No. 06CAA070050, 2006-Ohio-4994; *State

v. Jackson*, 21 Ohio App.3d 157, 487 N.E.2d 585 (8th Dist. 1985); *State v.

Feathers*, 11th Dist. No. 2005-P-0039, 2007-Ohio-3024; see also, *State v.

Carter*, 8th Dist. No. 61502, 1993 WL 7700 (January 14, 1993).  However,

these cases and the reasoning applied therein pre-date the Supreme Court of

Ohio's test recently announced in *State v. Johnson*, supra.

{¶49} More recently, however, we have held that a defendant could commit aggravated robbery and felony murder with the same conduct. See *State v. Osman*, 4th Dist. No. 09CA36, 2011-Ohio-4626, ¶ 32; *State v. Abdi*, 4th Dist. No. 09CA35, 2011-Ohio-3550, ¶ 39. By extension, we have also reasoned that aggravated burglary and aggravated (felony) murder are offenses of similar import under R.C. 2941.25(A). *State v. Williams*, 4th Dist. No. 10CA3381, 2012-Ohio-6083, ¶ 50. Thus, in considering our prior reasoning that aggravated burglary and aggravated murder may be committed with the same conduct under *State v. Johnson*, certainly aggravated burglary and felonious assault may be committed by the same conduct as well.

{¶50} Based upon the record before us, it appears that the aggravated burglary was committed with the same animus as the felonious assault. Appellant was convicted of breaking into the victim's residence and inflicting physical harm on him by shooting him in the face two times, thus completing the aggravated burglary. *State v. Lacavera*, 8th Dist. No. 96242, 2012-Ohio-800, ¶ 46. A review of the record before us reveals that these events all occurred as part of the same transaction, and thus were committed with the same animus. Id. See also, *State v. Ragland*, 5th Dist. No. 2010CA00023, 2011-Ohio-2245, ¶ 80 (implicitly finding without expressly

stating that, under the *Johnson* test it is possible to commit aggravated burglary and felonious assault with the same conduct, but ultimately determining the two were not allied offenses as they were committed separately and with a separate animus).

{¶51} As such, we conclude that the crimes of aggravated burglary and felonious assault are allied offenses of similar import. Thus, Appellant may be found guilty of both, but only convicted and sentenced for one. *State v. Swiergosz*, 6th Dist. App. No. l-10-1013, l-10-1052, 2012-Ohio-830, ¶ ("The statutory mandate that only one 'conviction' result from allied offenses is a restriction 'against *sentencing* a defendant for more than one allied offense.' (Emphasis added) *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 29)"); R.C. 2941.25(A). Therefore, this matter must be remanded for resentencing. At the sentencing hearing, the State must elect which allied offense it will pursue for purposes of sentencing and conviction. *Lacavera* at ¶ 47; citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25. Accordingly, Appellant's fifth assignment of error is sustained and the decision of the trial court convicting and sentencing Appellant for both of these offenses is reversed.

ASSIGNMENT OF ERROR VI

{¶52} In his sixth assignment of error, Appellant contends that the trial court erred in entering consecutive sentences on the firearm specifications from a single transaction. The State counters by arguing that the trial court was correct in sentencing Appellant to consecutive firearm specifications, which it contends was required under R.C. 2929.14(D)(1)(g). However, based upon our disposition of Appellant's fifth assignment of error, which concluded that aggravated burglary and felonious assault are allied offenses of similar import for which the State could only obtain one sentence and conviction, we agree with Appellant.

{¶53} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court of Ohio announced the standard for appellate review of felony sentences. We must employ a two-step analysis. First, we must "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If the sentence is not clearly and convincingly contrary to law, we review it for an abuse of discretion. Id.

{¶54} Appellant complains that the trial court's imposition of consecutive sentences for the two firearm specifications was contrary to law.

The State responds by directing our attention to the version of R.C. 2929.14 that was in effect at the time Appellant committed his crimes, with an effective date of April 7, 2009, which provides in section (D)(1)(g) as follows:

> "If an offender is convicted of or pleads guilty to two or more felonies, *if one or more of those felonies is* aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, *felonious assault*, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (D)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall* impose on the offender the prison term specified under division (D)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications."
>
> (Emphasis added).

The specifications described in 2929.14(D)(1)(a) include 2941.145 specifications, which are the types of firearm specifications Appellant was

sentenced on relating to the aggravated burglary, as well as the felonious assault charges. Further, R.C. 2929.14(D)(1)(a)(ii) states that the prison term for R.C. 2941.145 specifications is three years.

{¶55} Here, although Appellant was found guilty of two felony offenses, one of which was felonious assault, we have determined that those offenses were allied offenses of similar import. As such, Appellant can only be "convicted" of one of the offenses. "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A); *State v. Swiergosz*, supra, at ¶42. Further, in order to correctly apply R.C. 2929.14(D)(1)(g), which specifies that an offender must be "convicted" or have plead guilty to two or more felonies, we must recognize that "[u]nder R.C. 2941.25, a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." *Swiergosz* at ¶ 43; citing *Whitfield* at ¶ 12. Because Appellant cannot be convicted of both aggravated burglary and felonious assault, he does not fall under the purview of R.C. 2929.14(D)(1)(g), which requires convictions for two felonies. Thus, the trial court's imposition of two three-year firearms terms was contrary to law. Accordingly, Appellant's sixth assignment of error is sustained. As a result,

the trial court's decision in this regard is also reversed, and the matter is

remanded for resentencing in accordance with our instructions under

Appellant's fifth assignment of error.

**JUDGMENT REVERSED AND REMANDED.**

Harsha, J., concurring:

{¶56} I concur in judgment and opinion on the first and sixth assignments of error. However, I concur in judgment only on the remaining assignments of error.

{¶57} On the second assignment of error I conclude both the trial court and our opinion mischaracterizes the nature of the impeachment evidence offered by the appellant. I agree with Jacobs' assertion that evidence of the victim's drug use and mental illness are probative of the victim's capacity to observe, remember or relate in events. Thus, they should have been admitted under Evid.R. 616(B), which expressly permits the use of extrinsic evidence to challenge the witness's credibility on those bases.

{¶58} It was also error under the fourth assignment of error to prohibit the appellant from attacking the victim's character for truthfulness under Evid.R. 404(A)(3), which allows an opponent to impeach a witness's credibility. A witness's character trait for veracity is always relevant to determine credibility. See Evid.R. 404(A)(3), staff note.

{¶59} Likewise, I conclude under the third and fourth assignments of error that the trial court erred in refusing to admit the opinion testimony

concerning the victim's character for truthfulness.  See Evid.R. 404(A)(3),

Evid.R. 405(A) (the method of proving character – by opinion) and Evid.R.

608(A) (evidence of character of a witness by opinion).

{¶60} However, based upon the admission of the appellant's

confession and the evidence that corroborates the victim's testimony, I find

the errors in assignments of error two, three, and four to be harmless beyond

a reasonable doubt.  See, *Chapman v. California* (1967), 386 U.S. 18, 24, 87

S.Ct. 824, 17 L.E.2d 705.

{¶61} Moving to the fifth assignment of error, I agree the offenses are

"of similar import."  But, I would remand to the trial court to determine if

they were "committed by the same conduct", i.e. a single act, committed

with a single state of mind.  See *State v. Williams*, Scioto App. No.

10CA3381, 2012-Ohio-6083, ¶¶ 45-46.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J:    Concurs in Judgment and Opinion.
Harsha, J.:  Concurs in Judgment and Opinion as to Assignments of Error I & VI;
             Concurs in Judgment Only with Opinion as to Assignments of Error II, III, IV, & V.

                                        For the Court,


                              BY:    _____
                                     Matthew W. McFarland
                                     Presiding Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**